UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN RE: CAIRES

RICHARD CAIRES,
    *Appellant*,

v.

JPMORGAN CHASE BANK, N.A.,
    *Appellee*.

No. 3:20-cv-00164 (JAM)

**ORDER AFFIRMING DECISION OF BANKRUPTCY COURT**

This bankruptcy appeal relates to state court foreclosure proceedings. The question presented is whether the Bankruptcy Court abused its discretion when it granted a motion to lift the automatic bankruptcy stay under 11 U.S.C. § 362 so that a bank could continue its prosecution of a state court foreclosure action against the debtor. Because I conclude that lifting of the stay was not an abuse of discretion, I will affirm the decision of the Bankruptcy Court.

**BACKGROUND**

This *pro se* bankruptcy appeal is the latest chapter of a long-running litigation saga involving foreclosure proceedings for a residence at 634 North Street in Greenwich, Connecticut. The *pro se* appellant is Richard Caires, and the appellee is JP Morgan Chase Bank (the "Bank").

The appeal arises from a decision of the United States Bankruptcy Court for the District of Connecticut that granted the Bank's motion to lift the automatic bankruptcy stay. I will summarize below the principal facts and conclusions as set forth in Chief Judge Manning's lengthy decision. *See In re Caires*, 611 B.R. 1 (Bankr. D. Conn. 2020).

In 2006 Caires purchased the Greenwich property for more than $5 million. At some

point after the original lender was placed into government receivership, the Bank became the alleged holder and owner of Caires' loan debt and as secured by a mortgage on the property.

When Caires defaulted and stopped paying the mortgage in 2009, Caires and the Bank became embroiled in litigation that has bounced for years between multiple federal and state courts. Caires started it off by suing the Bank in the Connecticut Superior Court, claiming that the Bank had engaged in fraud and unfair trade practices and seeking to estop the Bank from foreclosing on the property. The Bank responded by removing the action to this Court and by adding a foreclosure counterclaim. Judge Bryant ended up dismissing Caires' claims in July 2012 and remanding the foreclosure action to Connecticut state court in September 2012. *See Caires v. JP Morgan Chase Bank, N.A.*, 880 F. Supp. 2d 288, 291 (D. Conn. 2012).

The foreclosure action then lingered for more than two years until the state court scheduled a trial date for November 5, 2014. But just two days before the trial date, Caires filed a Chapter 13 bankruptcy case. This would be the first of three bankruptcies he has filed, and of course it triggered the standard automatic bankruptcy stay under 11 U.S.C. § 362(a) to stop the Bank from further prosecuting the state court foreclosure action.

Two months later the bankruptcy case was dismissed in January 2015. As Chief Judge Manning recounts, it was dismissed on the ground that Caires' Chapter 13 plan "contained no information—the Debtor [Caires] did nothing other than sign and file the Chapter 13 Plan," and the plan "was therefore completely deficient." *In re Caires*, 611 B.R. at 3.

The state court foreclosure proceedings then resumed, and a firm trial date was set for April 12, 2016. But the very day before the new trial date, Caires filed a notice of removal to remove the action to the United States District Court for the Southern District of New York. The case remained in the New York federal court until it was remanded back to the Connecticut state

court in January 2017.

The state court eventually set a new trial date for August 3, 2017. But once again the very day before trial, Caires filed a notice of removal to remove the case to this Court. Judge Hall promptly remanded the case back to Connecticut state court on the ground that the removal was plainly untimely and noting her concern that "Caires has engaged in a troubling pattern of filing meritless notices of removal on the eve of the state court trial that is to determine whether JPM [the Bank] is entitled to foreclose on his property." *See J.P. Morgan Chase Bank, N.A. v. Caires*, 2017 WL 3891663, at *3 (D. Conn. 2017).

The state court set a new trial date for January 31, 2018. But on the very day before trial, Caires filed another Chapter 13 bankruptcy case, once again triggering the automatic stay to scuttle the state court's plan to conduct a foreclosure trial. The bankruptcy was dismissed a few months later in April 2018 on numerous grounds, including Caires' failure to file required information and failure even to qualify as an individual eligible to seek relief under Chapter 13.

The Connecticut state court rescheduled the trial to May 22, 2018. But Caires did not show up for trial. The state court conducted the trial and entered a judgment of strict foreclosure, concluding in relevant part that the Bank was the holder and owner of the note as secured by the mortgage on the property, that Caires was in default, that the fair market value of the property was $6.6 million, and that the debt owed to the Bank was more than $8.3 million.

In June 2018, Caires appealed the state court's foreclosure judgment, an action which triggered an automatic appellate stay under Connecticut law. But one year later and while the appeal was pending, the Connecticut trial court entered an order in June 2019 granting the Bank's motion to terminate the appellate stay. It concluded in relevant part that Caires' "appeal was filed '*for delay only* and that due administration of justice requires the stay to be

terminated.'" *In re Caires*, 611 B.R. at 6 (quoting state trial court ruling).

Having secured a foreclosure judgment, the Bank filed a motion in the state court to set law days to finalize its title to the property. *See Sovereign Bank v. Licata*, 178 Conn. App. 82, 97-98 (2017) (discussing sequence of foreclosure proceedings and setting of law days). The state court set oral argument on the motion for July 15, 2019. But just three days before the argument, Caires filed for Chapter 7 bankruptcy, thereby triggering once again an automatic bankruptcy stay.

The Bank moved under 11 U.S.C. § 362(d) to lift the bankruptcy stay. The Bankruptcy Court granted the motion. It ruled that the Bank had met its burden to show cause for relief from the stay under three different statutory provisions.

First, the Bankruptcy Court concluded that good cause existed under 11 U.S.C. § 362(d)(1), which provides in relevant part that a court "shall" grant relief "for cause, including the lack of adequate protection of an interest in property of such party in interest." *In re Caires*, 611 B.R. at 6 (quoting § 362(d)(1)). It noted that Caires "has not made a mortgage payment since August 1, 2009," and that "no equity exists in the property" because the debt well exceeds the value of the property. *Id.* at 6, 7.

Second, the Bankruptcy Court concluded that good cause existed under 11 U.S.C. § 362(d)(2), which provides in relevant part that a court "shall" grant relief "if the debtor does not have any equity in such property and such property is not necessary to an effective reorganization." *In re Caires*, 611 B.R. at 7 (quoting § 362(d)(2)). It noted that "no equity in the property exists" and that the property "is not necessary to an effective reorganization because Chapter 7 provides for liquidation of a debtor's assets, not reorganization." *Id.* at 7.

Third, the Bankruptcy Court concluded that good cause existed under 11 U.S.C. §

4

362(d)(4), which provides in relevant part that a court "shall" grant relief "if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved – … (B) multiple bankruptcy filings affecting such real property." 611 B.R. at 7 (quoting § 362(d)(4)). It noted in part that "[t]he record establishes that the Debtor filed multiple bankruptcy cases to stay the trial in the Superior Court Foreclosure Action and to frustrate JP Morgan's right to foreclose," and "[i]t cannot be refuted that each of the Debtor's bankruptcy cases stayed a scheduled trial date or the resetting of law days in the Superior Court Foreclosure Action." *Id.* at 8.

The Bankruptcy Court relied as well on the conclusions of two other judges that Caires had engaged in prior litigation tactics for purpose of improper delay. *Ibid.* It further concluded that Caires' multiple bankruptcy cases "served no bankruptcy purpose other than to stay trial and the resetting of law days in the Superior Court Foreclosure Action." *Id.* at 9.

Having concluded that the Bank had met its burden to show cause for relief from the stay on each one of these three different grounds, the Bankruptcy Court addressed Caires' argument that the Bank was not the true holder of the note and therefore not entitled to enforce it. The Bankruptcy Court rejected this argument on two grounds. First, it concluded that this argument was barred by *res judicata* because "[w]hether the Debtor owes a debt to JP Morgan and whether JP Morgan is a party in interest entitled to relief from the automatic stay were fully and finally decided in the Superior Court Foreclosure Action." *Id.* at 10. Second, it concluded that this argument was jurisdictionally precluded by the *Rooker-Feldman* doctrine. *Ibid.*

Caires filed a timely notice of appeal. He also filed an emergency motion for reinstatement of the automatic stay pending adjudication of his appeal, and I denied this motion. *See In re Caires*, 2020 WL 772815 (D. Conn. 2020). I concluded in relevant part that Caires had

not established a likelihood of success on appeal: "Chief Judge Manning's order contains a thorough and careful review of the law governing whether to lift the automatic stay and specific findings that a lifting of the stay was warranted in light of Caires' history of non-payment, his vexatious efforts to impede foreclosure proceedings by means of collateral litigation and bankruptcy filings, and her recognition of the jurisdictional limits under the *Rooker-Feldman* doctrine on the authority of the Bankruptcy Court or any federal court to entertain Caires' challenges to the grounds for the state court foreclosure proceedings." *Id.* at *2.

In the meantime, while the appeal before me has been pending, the parties have resumed their state court litigation. Caires filed a motion to dismiss the foreclosure action which was denied by the state trial court and very recently affirmed on appeal. *See Caires v. JP Morgan Chase Bank, N.*A, 2020 WL 1893448 (Conn. Super. Ct. 2020), *aff'd* 201 Conn. App. 908 (2020). The state trial court also granted the Bank's motion to terminate any appellate stay on the ground of Caires' improper litigation purposes:

> This action is now over ten years old. It has, without a doubt, been fully and fairly litigated, as evidenced by the staggering number of docket entries and short calendar appearances. All of the issues have been exhaustively litigated and then decided by the court. At this juncture (if not much earlier), the claims by the plaintiff have become redundant and frivolous. Any subsequent appeal by the plaintiff can only be for purposes of delay. Furthermore, the due administration of justice requires such a prospective termination. …This court believes that further appeals by the plaintiff raising the same issues which have already been decided would likely suffer the same adverse result. Further, prospective termination of an appellate stay would not cause the plaintiff irreparable harm. Its consequences would be largely financial in nature which could be rectified should the plaintiff ultimately prevail in any pre-existing appeals. Conversely, it is the defendant which has sustained direct harm as a result of the plaintiff's incessant and meritless pleadings and appeals. The defendant has been obliged to incur costs to defend against the plaintiff's tactics of delay, and over these past ten years it has been forced to carry an ever increasing unproductive loan. On a still larger stage, it is the judicial system, designed to protect all litigants, which has been compromised by having its resources continuously stretched by this single case.

2020 WL 1893448, at *2.

## DISCUSSION

The filing of a bankruptcy petition generally triggers an automatic stay of any judicial proceeding or other act against the property of the debtor's estate that was or could have been commenced before the filing of the petition. *See* 11 U.S.C. § 362(a); *City of Chicago, Illinois v. Fulton*, --- S. Ct. ---, 2021 WL 125106, at *2 (2021). But a Bankruptcy Court may lift the automatic stay after a hearing and on request of a party in interest who shows cause for relief from the stay. *See* 11 U.S.C. § 362(d).

The order of a bankruptcy court to lift an automatic bankruptcy stay is a final appealable order, *see Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020), one which is subject to review for abuse of discretion. *See In re AMR Corp.*, 730 F.3d 88, 98 (2d Cir. 2013). More generally, a bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *See In re Motors Liquidation Co.*, 957 F.3d 357, 360 (2d Cir. 2020) (*per curiam*).

Caires argues that the Bankruptcy Court erred when it decided to lift the automatic stay despite Caires' objection that the Bank had filed a false proof of claim. He argues that the Bank's proof of claim is fraudulent because there are "two conflicting versions" of the note that establishes the debt—one without an endorsement and another with an endorsement. Doc. #33 at 8-9. According to Caires, the person (Cynthia Riley) who purportedly endorsed the note that was submitted by the Bank to the Bankruptcy Court has disclaimed knowing Caires or having dealings with him. *Id.* at 12. He states that "[t]his fraud and misrepresentations of the [Bank] were discovered after the state judgement was rendered." *Id.* at 7.

In declining to consider the merits of Caires' argument, the Bankruptcy Court relied in part on the *Rooker-Feldman* doctrine, which jurisdictionally bars federal courts from hearing

7

"cases that function as *de facto* appeals of state-court judgments." *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018). There are four requirements that must be met in order for the *Rooker-Feldman* doctrine to bar a plaintiff's claim: "(1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced." *Id.* at 645.

All four of these requirements are established here. First, Caires lost in the state court foreclosure proceedings. Second, the injury he complains of is the state court foreclosure judgment that determined his property was subject to foreclosure; by contesting the Bankruptcy Court's lifting of the automatic stay, he seeks to avert the injury caused by continuing efforts in state court to enforce the foreclosure judgment. Third, he seeks review and rejection of an essential basis for the state foreclosure judgment—that the Bank was the valid holder of the note with rights to enforce it and to foreclose against the property. Lastly, the state court foreclosure judgment entered before Caires filed for bankruptcy in this case.

In *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423 (2d Cir. 2014) (*per curiam*), the Second Circuit found a similar claim to be barred by the *Rooker-Feldman* doctrine. There, the plaintiff alleged that the defendants misrepresented that they had standing to foreclose in part because one of the defendants was not the holder of the plaintiff's note, and they further alleged that the defendants submitted fraudulent title documents during the state court proceedings. *Id.* at 427. The Second Circuit noted that in order to "determine whether the state judgment was wrongfully issued in favor of parties who, contrary to their representations to the [state] court, lacked standing to foreclose," the federal court would have "to review the state proceedings and determine that the foreclosure judgment was issued in error." *Ibid.* Because of

this, the Second Circuit held that "[t]o the extent [plaintiff] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars [plaintiff]'s claim." *Ibid.*

Similarly, in the bankruptcy context, this Court and the Second Circuit have ruled that the *Rooker-Feldman* doctrine likely precluded the adjudication of a debtor's objection to the lifting of an automatic bankruptcy stay where the objection was based on a claim of a factual dispute about whether the foreclosure bank was the holder and servicer of the debt note. *See In Re Barretta,* 560 B.R. 630, 632 (D. Conn. 2016), *aff'd sub nom. Barretta v. Wells Fargo Bank, N.A.*, 693 F. App'x 26 (2d Cir. 2017); *see also Powell v. Ocwen Loan Servicing, LLC*, 2020 WL 7688338, at *2 (2d Cir. 2020) (*Rooker-Feldman* doctrine barred federal court action that sought to "invalidate the legal basis for the foreclosure judgment").

Seeking to avoid the *Rooker-Feldman* doctrine, Caires frames his argument as one that is "focused on the filing of a false claim in the Bankruptcy Court," rather than "seeking to invalidate the state foreclosure judgement." Doc. 33 at 9-10. But this is a distinction without a difference. For the Bankruptcy Court to have concluded that the Bank's claim was false as Caires alleges, the Bankruptcy Court would necessarily have had to conclude that the very premise for the state court foreclosure judgment was invalid, such that the Bankruptcy court "could not have passed upon these claims [of a false claim in the bankruptcy proceeding] without inviting a review and rejection of the state court's judgment." *Powell*, 2020 WL 7688338, at *2.

Nor does it make any difference if, as Caires argues, he did not realize the Bank's alleged fraud until after the state judgment was rendered. Doc. #33 at 7. His remedy is to seek to appeal or re-open the state court judgment rather than to use the occasion of finding new evidence as grounds to enmesh a federal court in what amounts to an appeal from a state court judgment. *See*

*Johnson v. Orr*, 551 F.3d 564, 569 (7th Cir. 2008) (rejecting argument that *Rooker-Feldman* doctrine does not apply where basis for claim is newly discovered evidence) *cf. Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 87 (2d Cir. 2005) (rejecting argument that federal plaintiff may evade *Rooker-Feldman* by raising federal claim that he failed to pursue in state court).

In light of all this, I would be inclined to affirm the Bankruptcy Court's reliance on the *Rooker-Feldman* doctrine but for an issue not raised by the parties that appears to be implicated by the record. Although the foreclosure judgment has entered, the parties report that appeals remain pending in the state court. Docs. #39, #40. The pendency of any appeal creates some uncertainty about whether the *Rooker-Feldman* doctrine should apply here. Although district "courts in this Circuit have routinely applied *Rooker-Feldman* despite pending state-court appeals," *Kelly v. New York*, 2020 WL 7042764, at *7 (E.D.N.Y. 2020), the Second Circuit has yet to address the issue, and several other appeals courts have declined to apply the *Rooker-Feldman* doctrine if a state court appeal is pending. *See Butcher v. Wendt*, 975 F.3d 236, 246 (2d Cir. 2020) (Menashi, J., concurring in part and concurring in the judgment); *Parker v. Lyons*, 757 F.3d 701, 705 (7th Cir. 2014) (citing cases).

The Bankruptcy Court also relied on the doctrine of *res judicata*. Under Connecticut law, the doctrine of *res judicata* or claim preclusion provides that a final judgment when rendered on the merits operates as an absolute bar to a subsequent action upon the same claim, either between the same parties or between those in privity with the parties. *See Wheeler v. Beachcroft, LLC*, 320 Conn. 146, 156-57 (2016). "Generally, for *res judicata* to apply, four elements must be met: (1) the judgment must have been rendered on the merits by a court of competent jurisdiction; (2) the parties to the prior and subsequent actions must be the same or in privity; (3) there must have

been an adequate opportunity to litigate the matter fully; and (4) the same underlying claim must be at issue." *Ibid*. In light of the public policy that a party should not be able to relitigate a matter that it has previously had a full and fair opportunity to litigate, *res judicata* under Connecticut law extends not only to claims that were actually litigated but those that might have been made in the prior litigation between the parties. *Id.* at 157. It looks clear that *res judicata* forecloses Caires from contesting the Bank's authority to foreclose. Moreover, Connecticut law allows *res judicata* to apply even if an appeal is pending. *See Peterson v. Wells Fargo Tr.*, 721 F. App'x 13, 15 n.2 (2d Cir. 2018); *Carnemolla v. Walsh,* 75 Conn. App. 319, 326-27 (Conn. App. 2003).

Nevertheless, even absent an application of *res judicata* or the *Rooker-Feldman* doctrine, I would still conclude that the Bankruptcy Court did not abuse its discretion by lifting the stay to allow the foreclosure process to proceed in state court rather than accepting Caires' invitation to first determine the validity of the Bank's claim. A holder of the note and mortgage qualifies as a "party in interest" who may seek relief under 11 U.S.C. § 362(d) from the automatic bankruptcy stay. *See In re Sterling*, 737 Fed. App'x 52, 53 (2d Cir. 2018). In light of the existing state court foreclosure judgment obtained by the Bank, the Bankruptcy Court had plausible grounds to conclude that the Bank qualified as a party in interest who could seek relief from the automatic stay. If there were questions still to be resolved about fraud or the validity of the Bank's authority to foreclose, then those questions could be raised by Caires in the continuing foreclosure proceedings. Caires does not show why he was entitled to have the Bankruptcy Court—rather than a competent state court most familiar with the litigation—conduct an evidentiary hearing to definitively determine the validity of the Bank's authority in the first instance.

Indeed, if the Bankruptcy Court were to conduct its own inquest into the validity of the

Bank's right to foreclose, then this would likely interfere with ongoing state proceedings and for which *Younger* abstention would have been appropriate. *See, e.g., Toczek v. Alvord*, --- Fed. App'x ---, 2021 WL 48153 (2d Cir. 2021) (*Younger* abstention precludes federal court intervention in ongoing foreclosure proceedings where state court appeal pending). Accordingly, to the extent that Caires argues that the Bankruptcy Court erred because it declined to adjudicate the validity of the Bank's claim prior to lifting the automatic stay, I conclude that he has failed to show that the Bankruptcy Court's decision was unreasonable or amounted to an abuse of discretion.

Nor does Caires show that the Bankruptcy Court did not afford him a fair hearing, because the record is clear that the Bankruptcy Court allowed Caires ample opportunity to press his claim that the Bankruptcy Court should conduct a further evaluation of his fraud claim before granting the Bank's motion to lift the automatic stay. After the Bank filed its motion for relief from the stay, Caires asked for and was granted an extension of time to file his response. Doc. #44, *In re Caires* 5:19-bk-50934 (Bankr. D. Conn.) (C.J. Manning). Caires filed a response to the Bank's motion on September 30, 2019, which included his allegation with evidence that the Bank had engaged in fraud. Doc. #37, 5:19-bk-50934. On October 15, 2019, the Bankruptcy Court conducted a status conference for over an hour to discuss the parties' filings. Doc. #48, 5:19-bk-50934. On November 12, 2019, the Bankruptcy Court conducted a motion hearing that lasted almost two hours. Doc. #59, 5:19-bk-50934. The Bankruptcy Court then permitted Caires to file additional information to supplement his argument about the Bank's alleged fraud. Doc. #63, 5:19-bk-50934.

Apart from Caires' claim that focuses on whether the Bankruptcy Court should have adjudicated the validity of his fraud claim before lifting the automatic stay, Caires does not raise

any serious challenge to the Bankruptcy Court's interpretation and application of the law under 11 U.S.C. § 362(d) that allows it to lift an automatic stay. In light of the Bankruptcy Court's careful and detailed explanation of the basis for its conclusions that there was "cause" for any of three independent reasons to lift the stay under § 362(d)(1), § 362(d)(2), and § 362(d)(4), I find no error of fact or law and therefore conclude that the Bankruptcy Court did not abuse its discretion when it granted the Bank's motion to lift the automatic stay.

## CONCLUSION

For the reasons set forth above, the decision and order of the Bankruptcy Court is AFFIRMED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 15th day of January 2021.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge